JS/6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 2879 | **DATE** | 11/13/2002 |
| **CASE TITLE** | U.S.A. ex rel Anibal Santiago vs. George Welborn et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, we deny the Section 2254 petition for a writ of habeas corpus [1-1] brought by petitioner Anibal Santiago. This is a final and appealable order. This case is terminated.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 35 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | 02 NOV 18 AM 8:25 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

U.S. DISTRICT COURT
CLERK
FILED-ED 10

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex rel )
ANIBAL SANTIAGO )
)
Petitioner, )      Case No. 97 C 2879
v. )
)      District Judge Wayne R. Andersen
GEORGE WELBORN, )
and ILLINOIS ATTORNEY GENERAL, )
)
Respondents. )

This case is before the Court on the petition of Anibal Santiago for writ of habeas corpus

pursuant to 28 U.S.C. § 2254. For the following reasons, the petition for habeas corpus is denied.

## BACKGROUND

Petitioner does not challenge the statement of facts set forth in the order of the Illinois

Appellate Court affirming his murder conviction. *See People v. Santiago*, 136 Ill.App.3d 774, 483

N.E.2d 944 (1st Dist. 1985). For purposes of federal habeas review, "a determination of a factual

issue made by a *State* court shall be presumed to be correct." 28 U.S.C. § 2254(e). Accordingly, we

adopt the facts as our own.

Following a jury trial in the Circuit Court of Cook County, Illinois, petitioner Anibal

Santiago was found guilty of murder and sentenced to a term of 70 years imprisonment. Co-

defendants Edwin Gutierrez and Eduardo Rosario were also convicted of murder by the same jury.

Co-defendant Alberto Arroyo was tried at a simultaneous bench trial before the same judge. The

trial court found Arroyo not guilty.

*35*

At trial, brothers Charles and James Kidd testified that shortly prior to the shooting they were traveling west on Courtland between Monticello and Lawndale. Charles Kidd lived at 3706 Courtland which was three houses from Lawndale. As they drove up to Charles' house, Charles saw a "heavy-built" man in a black leather jacket, whom he identified as petitioner Santiago, emerge from the gangway next to his house. Charles saw Santiago walk up to a 1973 maroon Pontiac LeMans that was parked in front of his house. Santiago began talking with the individual sitting in the driver's seat of the Pontiac, whom both brothers identified as Gutierrez. Charles Kidd then turned his truck around and parked it across the street from the Pontiac behind a Buick Electra 225.

Charles Kidd's wife then pulled up in her car, and the Pontiac quickly drove westbound and was not seen again by either brother. Meanwhile, James Kidd saw three men leave the parked Buick Electra and head down Lawndale towards the alley. The Buick was then driven around the corner where it stopped and waited near Lawndale and Courtland. Shortly thereafter, the Kidd brothers testified they heard gunshots and ran to the intersection of Lawndale and Courtland where they observed at least three men jump into the Buick. Defendant Santiago, who was the driver of the Buick at that time, noticed that the Kidd brothers were watching him. He pointed his finger and yelled at the brothers. As the car drove away, Charles Kidd saw that the license plate number was QA24 and two other numbers that he could not ascertain.

Sonya Rodriguez testified that on October 7, 1981, the date of the murder, she and her baby had been living with the victim, Juan Gomez, in an apartment at Monticello and Courtland in Chicago. At approximately 12:30 p.m. on that date, she was inside the apartment while the victim was outside fixing a flat tire on his car. She heard six or seven gunshots, looked out her front living room window and saw the victim lying on the sidewalk. Within seconds after the shooting she saw

2

the backs of three men running into the alley towards Lawndale Avenue. Rodriguez stated that one of the men was stocky with dark hair, wore a black leather jacket and held a gun up in the air as he ran into the alley. A second man was slightly taller than the first man and was wearing an afro haircut and green camouflage army pants. The third man was about the same height as the second man.

Also testifying for the State were Yvonne Sosa and Nina Thompson, who lived together at 1841 Lawndale. Both women stated they heard the shooting. Sosa testified that after being awakened by the gunshots, she went to her bedroom window and saw three men coming from the direction of Monticello Street, where the shooting occurred. The men ran towards Lawndale Avenue where a brown Buick Electra was waiting for them. A maroon colored car followed the three men down the alley towards Lawndale Avenue.

Sosa testified that the first man she saw running down the alley was 5'8", had a beard and was wearing a black leather jacket and dark pants. He also had a gun and red and blue ski mask in his hand as he ran down the alley. She identified Santiago at trial as this first man. The second man Sosa saw running in the alley was a little taller and thinner than Santiago and had a small beard and black hair. He wore a green windbreaker and dark pants. She identified defendant Gutierrez in a post-arrest lineup and in court as the second man. Sosa testified that the third man wore green pants and had an afro haircut, a small beard and a mustache. He also was carrying a gun in his hand while he ran down the alley. Before exiting the alley, the man turned around and looked at Sosa. Subsequently, Sosa identified defendant Rosario as the third man in a post-arrest lineup and at trial.

All three defendants and codefendant Arroyo were arrested within 20 minutes after the shooting in a brown Buick Electra 225 with Illinois license plate QA2807. The Buick was stopped

approximately two miles from where the shooting occurred. Immediately after their arrest, Santiago and Gutierrez were taken to a police station where they were identified in a lineup by the Kidd brothers.

Police Officer William Jaconetti testified that near the scene of the arrest he found a 1973 maroon Pontiac LeMans with a warm engine. Several weapons were recovered from the trunk of the Pontiac. Two of the weapons, a .357 magnum and a .38 special, were positively identified as the murder weapons. Also found in the trunk was a ski mask similar to the one described by witness Yvonne Sosa.

Dr. Eupic Choi of the Cook County Medical Examiner's Office testified that the victim's body had five entry wounds, two of which were on the back portion of the head. Two more entry wounds were on the right side of the upper arm. The last entry wound was on the victim's right buttock.

Defendants Gutierrez and Santiago presented no evidence on their behalf. Defendant Rosario presented the alibi testimony of his brother Oscar and a friend, Miguel Diaz. On December 18, 1982, the jury returned a verdict finding defendants Santiago, Gutierrez, and Rosario guilty of murder.

Petitioner Santiago and his co-defendants filed a consolidated appeal to the Illinois Appellate Court, First District, in which petitioner raised the following six issues: (1) he was not proven guilty beyond a reasonable doubt; (2) the State improperly used its peremptory challenges during *voir dire* to exclude minorities from the jury; (3) he was prejudiced by the State's discovery violation which resulted in ineffective assistance of counsel; (4) prosecutorial misconduct during trial resulted in reversible error; (5) the trial court erred in allowing the State to present a certain unanticipated

witness in aggravation and in denying petitioner's motion for a continuance to investigate the witness; and (6) his sentence was excessive. *People v. Gutierrez, et al,* 483 N.E.2d 944, 947 (1st Dist. 1985). On September 16, 1985, the Appellate Court affirmed petitioner's conviction and sentence. Id, at 956.

On October 21, 1985, petitioner filed a pro se petition for leave to appeal to the Illinois Supreme Court. In his petition, petitioner raised the following issues: (1) sufficiency of the evidence; (2) the State's failure to comply with Supreme Court Rule 412; (3) the State's discovery violation resulted in ineffective assistance of counsel; (4) the State improperly used its peremptory challenges to exclude minorities from the jury; (5) prosecutorial misconduct; and (6) the sentence was excessive. Petitioner's pro se petition for leave to appeal to the Illinois Supreme Court was denied on December 4, 1985.

Subsequently, petitioner filed a petition for post-conviction relief in the trial court which included the following claims: (1) ineffective assistance of counsel for failing to obtain petitioner's medical records to refute testimony of the State's witnesses; (2) ineffective assistance of counsel when trial counsel failed to obtain petitioner's medical records which would have shown that it was impossible for petitioner to communicate with the police officers; (3) ineffective assistance of counsel for failing to interview and present alibi witnesses; (4) ineffective assistance of counsel for not permitting petitioner to testify or informing him of his right to do so; (5) his extended term sentence was in violation of due process; and (6) ineffective assistance of appellate counsel for failing to appeal the denial of petitioner's motion to suppress identification. This petition was subsequently dismissed. See People v. Santiago, 1-94-4068 (Rule 23 Order)(Sept. 30, 1996).

5

Petitioner appealed the denial of his post-conviction petition to the Illinois Appellate Court, First District, raising the following issues: (1) the post-conviction court was improperly guided by the wrong standard in dismissing petitioner's petition; (2) ineffective assistance of counsel because counsel failed to challenge the involuntary drugged statement of petitioner; (3) ineffective assistance of counsel because counsel failed to obtain medical records documenting petitioner's injuries which would have refuted testimony that petitioner was seen running down the alley immediately following the murder; (4) ineffective assistance of counsel because counsel violated petitioner's fundamental right to testify; (5) summary dismissal of the petition violated the petitioner's right to due process because the petition contained newly discovered evidence that could have affected the outcome at trial. On September 30, 1996, the Illinois Appellate Court affirmed the denial of post-conviction relief. *See People v. Santiago*, 1-94-4068 (Rule 23 Order).

On November 4, 1996, petitioner filed a petition for leave to appeal to the Illinois Supreme Court. The petition essentially raised the following three issues: (1) the Appellate Court utilized improper standards in conflict with the post-conviction statute and with Illinois Supreme Court precedent when it held that petitioner's petition was properly dismissed without a hearing; (2) the Appellate Court ignored and failed to rule on petitioner's claim that his conviction was based on invalid premises (the drugged statement) in violation of due process, and the trial court's rationale for rejecting this claim, *res judicata*, was patently erroneous; and (3) in rejecting petitioner's claim of denial of his right to testify, the Appellate Court misapplied Illinois Supreme Court precedent in *People v. Thompkins*, 161 Ill.2d 148, 641 N.E.2d 371 (1994). On June 4, 1997, the Illinois Supreme Court denied the petition for leave to appeal. (See Order of the Illinois Supreme Court in *People v. Santiago*, No. 82201).

On April 23, 1997, prior to the Illinois Supreme Court's ruling on his petition for leave to appeal, petitioner filed the instant petition. This petition raises the following claims: (1) ineffective assistance of trial counsel for failure to obtain medical records that would have impeached the police officer's testimony; (2) ineffective assistance of counsel for failure to interview or produce an alibi witness; (3) ineffective assistance of counsel for failure to obtain medical records that would have refuted testimony by State witnesses who observed petitioner running down an alley; (4) ineffective assistance of counsel for failure to advise petitioner of his right to testify; (5) prosecutorial misconduct for using peremptory challenges to exclude minorities; (6) prosecutorial misconduct due to the prosecutor's improper remarks; (7) plain error due to the dismissal of his post-conviction petition without an evidentiary deposition of Juan Ruiz; (8) plain error due to the dismissal of the petition without an evidentiary hearing to determine the credibility of Ruiz's testimony; and (9) plain error due to the post-conviction petition being dismissed based on a mistaken view of *res judicata* and waiver. Respondent filed an answer to the petition for habeas corpus. On August 20, 2002, petitioner filed a supplemental brief.

Petitioner has exhausted his state court remedies in that he is now foreclosed from further pursuit of his constitutional claims in a state forum. 725 ILCS 5/122-1 *et seq.* (1996).

## DISCUSSION

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2245(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997); *see also Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc) ("[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law."). The federal

7

courts may not grant habeas relief under Section 2254 unless the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state courts; and (2) fairly present any federal claims in state court first, or risk procedural default. *See Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default."); *see also Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (same). "The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir. 1997) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

A petitioner has exhausted his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1985).

In this case, exhaustion is not an issue. Respondent concedes that petitioner has exhausted his state court remedies for purposes of federal habeas review because he has no further avenues in state court through which to challenge his conviction. We now turn to the issue of procedural default.

8

I.    Procedural Default

The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir. 1994). Procedural default occurs either when a state court has declined to address a federal claim because the petitioner failed to satisfy an independent state procedural requirement, *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991), or when the petitioner fails to present a claim to the state courts at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996). In Illinois, a habeas petitioner is required to raise all arguments before the Illinois Supreme Court, even though the Court has discretionary control over its docket. *O'Sullivan v. Boerckel*, 526 U.S. 838, 843 (1999).

In order for petitioner to preserve claims for federal habeas review, he must provide the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. In Illinois, "one complete round" is finished once the petitioner has presented the habeas claims, whether on direct appeal or on post-conviction appeal, at each stage of the appellate process, up through and including the Illinois Supreme Court. *See id.* at 847-48; *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999).

In this case, respondent contends that petitioner has procedurally defaulted claims regarding: (1) ineffective assistance of counsel due to counsel's failure to obtain medical records; (2) ineffective assistance of counsel because counsel failed to interview and produce an alibi witness; and (3) ineffective assistance of counsel because counsel failed to advise petitioner that he had a right to testify on his own behalf. We will address each of these issues in turn.

9

A.   Ineffective Assistance Of Counsel When Trial Counsel Failed To Obtain Medical Records That Would Have Refuted Witness Testimony And Impeached Police Officer's Testimony

Respondents incorrectly argue that these claims are procedurally defaulted because petitioner failed to raise these claims in his petition for leave to appeal to the Illinois Supreme Court following the Illinois Appellate Court's affirmance of the denial of post-conviction relief. Initially, petitioner raised these issues in his petition for post-conviction relief, which was dismissed. Subsequently, petitioner raised these issues in his appeal of the denial of post-conviction petition in the Illinois Appellate Court. After the denial of post-conviction relief was affirmed by the Illinois Appellate Court, petitioner filed a petition for leave to appeal to the Illinois Supreme Court. In this petition, petitioner raised a claim of ineffective assistance of counsel because trial counsel failed to obtain petitioner's medical records that would have a) refuted testimony by State witnesses that petitioner was seen running down an alley; and b) impeached police officer's testimony. Therefore, contrary to respondent's assertions, petitioner did not fail to raise these claims in his petition for leave to appeal to the Illinois Supreme Court following the Illinois Appellate Court's affirmance of the denial of post-conviction relief. Accordingly, these claims are not procedurally defaulted and are preserved for federal habeas corpus review.

B.   Ineffective Assistance Of Counsel For Failure to Interview And Produce An Alibi Witness

Petitioner concedes that he failed to exhaust state court remedies for the ineffective assistance of counsel claim for failure to interview and produce an alibi witness. Therefore, this claim is inappropriate for federal habeas review. However, even if a claim is procedurally defaulted, a federal court may nonetheless address the merits of a procedurally defaulted claim if the petitioner

10

can establish cause and prejudice that would excuse it or, alternatively, establish that he fits within the miscarriage of justice exception to the cause and prejudice rule. *Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977).

Beginning with the cause and prejudice standard, the Supreme Court has interpreted "cause" under this test to be something external to the petitioner which is both beyond his control and which cannot be fairly attributed to him. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In order to establish prejudice, the petitioner "must show not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

In this case, petitioner concedes that he cannot establish cause and prejudice that excuses the procedural default. However, petitioner can still overcome this procedural default by showing that he fits within the "miscarriage of justice" exception. This exception is limited to those extraordinary cases in which the petitioner is actually innocent of the crime for which he is imprisoned. *Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001). Therefore, it requires a colorable claim of actual innocence, as opposed to legal innocence, coupled with an allegation of a constitutional claim. *See Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992). The miscarriage of justice exception applies only if the petitioner can demonstrate that it is more likely than not that no reasonable jury would have convicted him in the absence of the alleged defect in the state court proceedings. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

In this case, petitioner claims that he informed counsel that he had been helping Ada Aviles jump start her car at the time of the murder. Although petitioner provided counsel with Ms. Aviles' name and address, counsel never contacted her. The Supreme Court has emphasized the narrow

11

scope of the fundamental miscarriage of justice exception. *See Sawyer*, 505 U.S. at 340. The possibility of an alibi witness does not prove petitioner's actual innocence. Moreover, the circumstantial evidence of petitioner's guilt is staggering and, we note, that petitioner has not presented an affidavit of Ms. Aviles in this court. Therefore, the claim of ineffective counsel for failure to produce an alibi witness is procedurally defaulted and is barred from federal habeas review.

C.    Ineffective Assistance Of Counsel For Failing To
Advise Petitioner That He Had A Right To Testify

Respondents argue that the claim of ineffective assistance of counsel for failing to advise petitioner that he had a right to testify and prohibited petitioner from testifying on his own behalf is procedurally defaulted because petitioner failed to raise this claim in his petition for leave to appeal to the Illinois Supreme Court following the Illinois Appellate Court's affirmance of the denial of his post-conviction relief. Respondents are incorrect.

Initially, petitioner raised this issue in his petition for post-conviction relief, which was dismissed. Subsequently, petitioner raised this issue in his appeal of the denial of post-conviction petition in the Illinois Appellate Court. After the Illinois Appellate Court affirmed the denial of the post-conviction petition, petitioner filed a petition for leave to appeal to the Illinois Supreme Court. In this petition, petitioner raised a claim of ineffective assistance of counsel, because trial counsel failed to advise petitioner that he had a right to testify and prohibited petitioner from testifying on his own behalf.

Thus, contrary to respondent's assertions, petitioner did not fail to raise this claim in his petition for leave to appeal to the Illinois Supreme Court on post-conviction review. Accordingly, this claim is preserved for federal habeas review.

II.    Merits of Claims Properly Presented

Title 28, United States Code, Section 2254(d) governs the consideration of any claim adjudicated by a state court on its merits. Under that statute, we may grant habeas relief only if the state court's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(2)(1). Under subsection (d)(2), habeas relief is possible if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the state court.

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), attempted to clarify the applicable standard of review within the meaning of section 2254. The Court noted that the Act does not explicitly prescribe a recognizable standard of review for applying either of the statutory clauses. *Id.* at 385. Recognizing the need for further clarification and direction to lower courts, the Supreme Court concluded that the "[the act] plainly sought to ensure a level of 'deference to the determinations of state courts,' as long as those decisions do not conflict with federal law or apply federal law in an unreasonable way." *Id.* at 376. Additionally, the Supreme Court determined that, in passing the statute, "Congress wished to curb delays, to prevent 'retrials' on federal habeas petitions and to give effect to state convictions to the extent possible under the law. When federal courts are able to fulfill these goals within the bounds of the law, [the statute] instructs them to do so." *Id.* Therefore, this Court is directed to apply a deferential review of the state court decision unless it is determined that the state court violated federal law.

Based on the discussion above, petitioner has properly preserved six of the claims in his habeas petition. The preserved claims are: 1) ineffective assistance of counsel because counsel failed

13

to obtain medical records that would have impeached the police officer's testimony and would have refuted testimony by state witnesses; 2) ineffective assistance of counsel because counsel failed to advise petitioner that he had a right to testify on his own behalf; 3) prosecutorial misconduct because the State arbitrarily and deliberately used its peremptory challenges to exclude minorities from the jury; 4) prosecutorial misconduct because the prosecutor made improper remarks; 5) error due to dismissal of the petition for post-conviction relief without an evidentiary deposition of Juan Ruiz or an evidentiary hearing to determine the credibility of Ruiz' testimony; and 6) error due to the post-conviction petition's dismissal based on a mistaken view of *res judicata* and waiver. We will address each of these claims in turn.

### A. Ineffective Assistance of Counsel

Petitioner first claims that he was denied the effective assistance of counsel. The standard for reviewing a claim of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* sets forth a two-prong analysis for determining ineffectiveness of counsel: 1) a showing that counsel's performance was deficient; and 2) a showing that the deficient performance prejudiced the defendant. *Id.* at 678.

In order to prevail on his claim of ineffectiveness under the first prong of the *Strickland* test, petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Id.* In reviewing the challenged conduct, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* To satisfy the prejudice prong of the *Strickland* test, petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* This Court "need not determine whether counsel's performance was

14

deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* Rather, "[i]f it is easier to dispose of an ineffective assistance of counsel claim based on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed." *Id.*

In this case, petitioner argues that counsel was ineffective for: 1) failing to obtain medical records that would have impeached the police officer's testimony; 2) failing to obtain medical records that would have refuted testimony by State witnesses; and 3) failing to advise petitioner of his right to testify.

First, petitioner claims ineffective assistance of counsel due to counsel's failure to obtain medical records that would have impeached the police officer's testimony. Specifically, petitioner argues that counsel failed to: 1) move to suppress the involuntary drugged statement of petitioner which was the basis for the sentencing court's extended term sentence; and 2) obtain medical records that would have impeached Officer Howell's testimony.

Petitioner states that his sentence was based, in part, on the testimony of Detective John Howell. At the sentencing hearing, the State called Chicago Police Detective John Howell who testified about a hospital room interview with the petitioner a year prior to the shooting of Juan Gomez. Detective Howell's testimony stated that he had interviewed the petitioner in the hospital after petitioner had been shot. Petitioner had been shot in the rectum and the throat and had undergone a tracheostomy and had been given Demerol for the pain when this interview took place.

Detective Howell's testimony is summarized in the direct appeal Appellate Court opinion:

> The testimony of Detective John Howell at the sentencing hearing
> disclosed that defendant's probable motive was revenge. His
> testimony indicated that defendants mistakenly believed the victim

15

had wounded Santiago one year earlier. While hospitalized after the
shooting, Santiago refused to give Howell any information regarding
his possible assailant other than the fact that a 'Latin king' had shot
him. Santiago informed Howell that retribution to the shooter would
be 'kept on the street' and that his gang would handle the shooter
themselves. Santiago also told Howell that he ran the Cobra street
gang.

*People v. Gutierrez, et al*, 483 N.E.2d 944, 955 (1ˢᵗ Dist. 1985).

Petitioner claims that it would have been medically impossible for him to have cooperated

with Detective Howell during the interview. Petitioner argues that trial counsel's failure to move to

suppress petitioner's statement at sentencing on the ground that it was obtained without

constitutionally required consent, due to petitioner's medical condition at the time of the interview,

was ineffective assistance of counsel. In addition, petitioner claims that trial counsel rendered

ineffective assistance at sentencing when he failed to obtain petitioner's medical records that would

have impeached Detective Howell's testimony. Petitioner argues that if trial counsel had moved to

suppress the drugged statement or had used the medical records to impeach the testimony of

Detective Howell, petitioner would not have received the 70 year, extended sentence.

The Sixth Amendment requires that the actions of defense counsel be within "the wide range

of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A statement is considered

voluntary if it is not the product of any police coercion or misconduct. *Colorado v. Connelly*, 497

U.S. 157 (1986).

Petitioner cites *Mincey v. Arizona*, 437 U.S. 385 (1978) in support of his position. In that

case, detectives went to the hospital where Mincey was confined in the intensive-care unit and

persisted in interrogating him while he was lying in bed barely conscious. Although Mincey asked

repeatedly that the interrogation stop until he could get a lawyer, the detectives continued

16

questioning. Moreover, Mincey complained several times that he was confused and unable to think clearly, and that he could answer more accurately the next day. The Supreme Court concluded that "[i]t is apparent from the record in this case that Mincey's statements were not "the product of his free and rational choice." 437 U.S. at 401.

In this case, the record reveals that, at the time petitioner made the statements, he was hospitalized and under the influence of the painkiller, Demerol. While being interviewed, petitioner coherently responded to the Detective's questions by writing out his answers on a slate. He did not, at any time, ask that the questioning be stopped. Moreover, he never complained that he was confused or unable to think clearly.

Under these circumstances, a reasonable attorney could conclude that petitioner had the ability to voluntarily and knowingly make the statements. Therefore, we find that counsel's performance fell within an objective standard of reasonableness. Moreover, there has been no showing that, "but for counsel's alleged error, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 678. For these reasons, we find that counsel was not ineffective for failing to move to suppress the statements or obtain the medical records.

Petitioner next argues that counsel was ineffective because he failed to obtain medical records that would have refuted testimony by State witnesses that petitioner was seen running down an alley. Petitioner claims that one year before the shooting of Juan Gomez, petitioner had been shot in the rectum and throat. Petitioner claims that the wound to his rectum had not healed properly at the time of the Gomez shooting and that petitioner had to wear a colostomy bag and was unable to run. Thus, petitioner claims that his medical condition at the time of the homicide contradicts witness testimony identifying petitioner as the offender who ran down the alley.

17

We find that petitioner is unable to show that counsel's defense strategy prejudiced him in any way. The medical records in question document that petitioner's groin wound was a year old at the time of the Gomez murder and had healed. Since petitioner was clearly ambulatory, the medical records present no inconsistencies when all of the evidence adduced at trial is considered. Three witnesses testified that they saw petitioner running from the scene. Therefore, petitioner cannot show that counsel's alleged errors were so serious as to deprive petitioner of a fair trial. *See Strickland*, 466 U.S. 668.

Finally, petitioner claims that he received ineffective assistance of counsel due to counsel's alleged failure to advise petitioner of his right to testify. Petitioner claims that before the trial started, petitioner informed counsel that he wanted to testify on his own behalf. Petitioner claims that counsel told petitioner that he could not testify and prohibited petitioner from testifying.

In this case, the Illinois Appellate Court addressed this issue in its opinion affirming the trial court's dismissal of petitioner's post-conviction petition. The Illinois Appellate Court held that "[t]he trial record here shows that, when the defense rested at defendant's trial, defendant made no indication that he wished to testify, and the post-conviction judge appropriately interpreted defendant's silence as an acquiescence not to testify. Since defendant had testified on two other occasions on his behalf, it is clear that defendant was well aware of his right to testify and he chose not to do so at trial of his own free will." *People v. Santiago*, No. 1-94-4068 (September 30, 1996).

The Seventh Circuit, however, has a bit of a different standard. The Seventh Circuit has held that "[t]he defendant need not protest and the judge need not question him, but in a subsequent collateral attack on the conviction the defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in

18

violation of professional standards) forbade him to take the stand." *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991).

In this case, there is simply no evidence in the record that petitioner wished to testify other than his self-serving, after the fact, statement. "[T]his barebones assertion by . . .petitioner, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary . . ." *Underwood*, 939 F.2d at 475. Therefore, petitioner's mere assertion that his constitutional right to testify was violated is not enough to establish a violation of his constitutional right.

Moreover, petitioner cannot establish prejudice in this case. The evidence against petitioner was overwhelming. Three eyewitnesses testified that they saw him running from the scene. The evidence against petitioner would not have been rebutted merely by his denials if he had taken the stand. For these reasons, we find that counsel did not render ineffective assistance of counsel by violating petitioner's right to testify.

In sum, petitioner has failed to establish how the state court's adjudication of these ineffective assistance of counsel claims was either contrary to, or an unreasonable application of, federal law as determined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668. Moreover, petitioner has failed to establish that the state court's determination was based on an unreasonable determination of facts given the record evidence. Accordingly, petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims. *See* AEDPA (28 U.S.C. §2254(d)); *Lindh*, 96 F.3d at 861.

### B. Prosecutorial Misconduct

Petitioner's next claim is that reversible error occurred due to alleged instances of prosecutorial misconduct. Specifically, he claims that: (1) the State used its peremptory challenges to exclude minorities from the jury; and (2) the prosecutor made improper remarks directed at defense counsel, counsel's cross-examination, and petitioner, as well as calling a defense witness a liar.

To prove prosecutorial misconduct, a petitioner must demonstrate both that statements made by the prosecutor were improper and that those improper statements deprived petitioner of a fair proceeding. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). When a prosecutor makes improper statements or asks improper questions during a trial or sentencing hearing, the court must determine whether those improper statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden,* 477 U.S. at 181 (citations omitted).

#### 1. Jury Selection

Petitioner is of Puerto Rican descent. In selecting the trial jury, petitioner claims that the State arbitrarily and deliberately used eight of its peremptory challenges to exclude blacks from the jury. Petitioner raised a claim concerning the State's alleged improper exclusion of minorities from the jury on direct appeal, and the Illinois Appellate Court addressed the merits of these issues.

Because Petitioner's conviction was final on December 4, 1985, when his leave to appeal to the Illinois Supreme Court on direct review was denied, he was not entitled to the rule announced in *Batson v. Kentucky*, 476 U.S. 79 (1986). Under *Batson*, discrimination is inferred if the defendant is a member of a cognizable racial group and the prosecutor exercises peremptory challenges to remove members of the defendant's race from the venire. *Compare Griffith v. Kentucky,* 479 U.S.

314 (1987) (giving retroactive application to *Batson* for cases pending on direct review or not yet final when *Batson* decided), *with Teague v. Lane*, 489 U.S. 288 (1989) (denying similar application for cases on collateral review). Because petitioner's conviction was final when *Batson* was decided, he is not entitled to retroactive application of the case. *See Griffith*, 479 U.S. 314, *Teague*, 489 U.S. 288.

In this case, the Illinois Appellate Court properly employed the appropriate standard of review, at the time, requiring a showing of systematic and purposeful exclusion. This was the standard announced by *Swain v. Alabama*, 380 U.S. 202 (1965), which was the controlling Supreme Court case at time of petitioner's direct appeal. The Illinois Appellate Court held that "proof of a systematic and purposeful exclusion of blacks from juries in case after case because of race is required before a prosecutor's use of peremptory challenges could be found to violate a defendant's right to a fair and impartial jury." 136 Ill.App.3d at 783, 483 N.E.2d at 950. The Illinois Appellate Court then concluded that because petitioner failed to make the showing required by the Supreme Court at the time, the court was unable to find that his constitutional rights were violated.

We find that the state court's adjudication of this claim was not contrary to, or an unreasonable application of, federal law as determined by the United States Supreme Court at the time. Petitioner made no showing of systematic and purposeful exclusion of blacks from juries in case after case because of race. Thus, the state court's decision properly conformed to the federal law during the time before petitioner's conviction became final. Therefore, habeas relief on this claim is precluded.

21

## 2. Improper Remarks

The remaining claims of prosecutorial misconduct, that the prosecutor made improper remarks throughout the trial directed at defense counsel and petitioner are very vague. A habeas petitioner must state specific facts fleshing out each ground for relief so that the District Court may tell from the face of the petition whether further habeas review is warranted. *Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990) (citing Rule 2(c), Rules Governing Section 2254 Cases in the United States District Court (1982)). A habeas corpus petition cannot stand on mere vague assertions and conclusions of a constitutional violation. *Wacht v. Cardell*, 604 F.2d 1245, 1247 (9th Cir. 1979); *Cunningham v. Estelle*, 536 F.2d 82, 83 (5th Cir. 1976). Rather, the petition must set forth facts with sufficient detail to point the court to a real possibility of constitutional error. *See United States ex rel Holes v. Mancusi*, 423 F.2d 1137, 1142 (2nd Cir. 1970).

In his petition, petitioner does not indicate which specific remarks at trial amounted to a due process violation entitling him to federal habeas relief. He merely states that "[t]he prosecutor made improper remarks throughout the trial directed at defense counsel, counsel's cross-examination and the petitioner. He also made improper remarks about a defense witness, i.e. he called him a liar to the jury during summation without having impeached his credibility." In his habeas petition, petitioner fails to provide additional facts to identify the specific instances of error.

However, in his reply brief, petitioner presents four instances of prosecutorial misconduct involving alleged improper remarks. In his reply brief, petitioner argues that prosecutors: 1) made improper remarks concerning reasonable doubt and the burden of proof; 2) interjected comments which belittled defense counsel and defense cross-examination; 3) made improper comments about petitioner; and 4) improperly characterized a co-defendant's alibi witness as a "liar."

22

Petitioner first argues that the prosecutor made improper remarks concerning reasonable doubt and the burden of proof. During voir dire of the jury, one of the prosecutors stated "are you aware that the burden of proof that we have in a murder charge is exactly the same burden we would have if a bicycle is stolen?" The prosecutor then commented that the burden was "the same burden in this case as in any other criminal case."

Petitioner argues that the prosecutor's remarks concerning reasonable doubt and the burden of proof were improper. He claims that the prosecutor's comments had the effect of lessening the importance of the State's burden of proof by implying that reasonable doubt was merely a minor detail. He argues that the prosecutor's remarks distorted the burden of proof and minimized reasonable doubt that it so infected the trial with unfairness as to make the resulting conviction a denial of due process.

To determine whether a statement by a prosecutor amounts to a constitutional violation, the test is whether the "statements were so inflammatory and prejudicial to the defendant petitioner as to deprive him of his liberty without due process of law as proscribed by the Fourteenth Amendment." *United States, ex rel. Clark v. Fike*, 538 F.2d 750, 760 (7th Cir. 1976), *cert. denied*, 429 U.S. 1064. *See also Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

We find that the prosecutor's remarks concerning the burden of proof were not so inflammatory and prejudicial to petitioner so as to deprive him of due process. The prosecutor was explaining that the burden of proof is the same in all criminal cases. The prosecutor's remarks did not misstate the burden of proof or minimize reasonable doubt. Moreover, the jury was properly instructed as to the burden of proof and reasonable doubt. Therefore, there was no prejudice and no constitutional violation.

Petitioner also argues that during trial prosecutors interjected comments which belittled defense counsel and defense cross-examination. During defense counsel's cross-examination of Yvonne Sosa, one of the prosecutors said "[h]e's trying to trick this girl." During defense counsel's cross-examination of James Kidd, the prosecutor suggested that counsel was "trying to confuse the jury." Finally, during closing argument, the prosecutor stated that either one of the defense attorneys was himself confused or was trying to confuse the jury. Petitioner claims that these remarks were inflammatory.

We find that these remarks did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. We do not find that these remarks were used repeatedly to the point of excessiveness. *See United States v. Crai*, 573 F.2d 455, 494 (7th Cir. 1977), *cert. denied,* 439 U.S. 820. "Characterization of a defense as fabricated, standing alone, is no more improper than characterizing a witness as a liar." *Crai,* 573 F.2d at 494. In this case, the evidence of petitioner's guilt far outweighs any potential prejudice. We find that these few references of the defense trying to confuse the jury or trick a witness are not so inflammatory so as to deprive petitioner of due process.

Petitioner also argues that prosecutors made comments that belittled petitioner. The prosecutors made remarks such as "look at the type of people you are sitting in judgment upon" and referred to petitioner and the other defendants as "creatures" and "vicious killers." We do not find that these comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. Ample circumstantial evidence proved that petitioner was guilty of the murder and any prejudice arising from the prosecutor's inflammatory comments was outweighed by the evidence of his guilt.

24

Finally, petitioner argues that the State's characterization in closing argument of codefendant Rosario's alibi witness, Miguel Diaz, as a "liar" was prejudicial. The Illinois Appellate Court found on direct review that this argument fails because Diaz did not testify for Santiago. Moreover, the Court held that the comment was a reasonable inference based upon the testimony presented at trial. Diaz's testimony conflicted with Rosario's own statement to the police and, as such, the "liar" characterization was permissible.

We find that the Illinois Appellate Court did not unreasonably apply federal law in determining that petitioner's trial was not tainted with unfairness due to the prosecutor's reference to Miguel Diaz as a "liar." The jury was presented with two conflicting stories by co-defendant Rosario and the witness Diaz. Obviously, one witness was lying. Thus, the prosecutor's comments were a commentary on the credibility issue that the jury needed to decide.

We also point out that Diaz did not testify for petitioner. Therefore, the evidence of petitioner's guilt outweighed any potential prejudice incurred by referring to this witness who did not testify for petitioner a "liar." Thus, the prosecutor's comments do not rise to the level of a constitutional violation.

C.  Dismissal Of Post-Conviction Petition Without
    A Deposition Or Evidentiary Hearing

Petitioner's next claim is that plain error occurred when his post-conviction petition was dismissed without either an evidentiary deposition of Juan Ruiz or an evidentiary hearing to determine the credibility of Ruiz' testimony. Petitioner claims that Juan Ruiz had signed a statement during the post-conviction proceedings that he, and not petitioner, had murdered Juan Gomez. Petitioner filed a motion during the post-conviction proceedings to have Ruiz' testimony taken at

an evidentiary deposition, because Ruiz was terminally ill. The trial court first ordered such a hearing but then reversed itself and denied the motion. Ruiz has since died.

Petitioner claims that his due process rights were violated since newly discovered evidence was uncovered that could have affected the outcome at trial. He claims that the statement of Ruiz casts doubt on petitioner's guilt. This claim, however, was adjudicated on the merits by the state court on post-conviction review. The state courts found that Ruiz' statement lacked credibility. We find that the state court's adjudication of this claim was not contrary to, or an unreasonable application of, federal law. Nor do we find that the state court's determination was based on an unreasonable determination of the facts given the evidence.

Although the judge did not give petitioner an evidentiary hearing, Illinois does not give post-conviction petitioners an automatic right to an evidentiary hearing. *See People v. Fren*, 210 Ill.App.3d 681, 686, 569 N.E.2d 934, 938 (2d Dist 1991). A hearing will be granted only if the petitioner makes a substantial showing of a violation of a constitutional right and if the allegations are supported by the record or by affidavits accompanying the petition. *Id.*

As the Illinois Appellate Court found on appeal of the denial of the post-conviction petition, the Ruiz statement is contradicted by the testimony of three eyewitnesses who identified petitioner. Moreover, Ruiz lacks credibility because he repudiated the statement soon after making it. Thus, at the time that the State decided the case, there was no person claiming that he murdered Gomez, rather than petitioner because Ruiz had repudiated his statement. Moreover, Ruiz' statement fails to account for the strong circumstantial evidence against petitioner, such as the fact that petitioner's car was used in the murder and petitioner was arrested in that car a few minutes later only a block from the murder scene.

26

Petitioner asks us to hold an evidentiary hearing. However, the Illinois courts have already rejected his new evidence of actual innocence, finding that it lacked any credibility. This factual finding is entitled to a presumption of correctness in federal habeas corpus proceedings. *See Patton v. Yount*, 467 U.S. 1025, 1038; *Ellis v. Collins*, 956 F.2d 76, 79 (5th Cir. 1992). For the reasons stated above, we find no basis to disturb that finding.

Petitioner was afforded a fair opportunity to present this claim in the state court proceedings. "The relevant question on habeas review . . . is not so much whether a petitioner has had all the trappings of a full evidentiary hearing, but rather whether the petitioner received 'careful consideration and plenary processing of [his claim] including full opportunity for presentation of the relevant facts.'" *Porter v. Gramley*, 112 F.3d 1308 (7th Cir. 1997) (quoting *Blackledge v. Allison*, 431 U.S. 63, 82-83 (1977)). We find that petitioner's allegations have been carefully reviewed by the state courts and that he is not entitled to an evidentiary hearing.

For these reasons, we find that petitioner's petition was properly dismissed without an evidentiary hearing. Therefore, petitioner has failed to show that a constitutional violation has occurred and, thus, he is not entitled to habeas relief on this claim.

D.     Dismissal Of Post-Conviction Petition Under Wrong Standard

Petitioner's next claim is that plain error occurred when his post-conviction petition was dismissed pursuant to the circuit court judge's mistaken view of the law of res judicata and waiver. This claim was also adjudicated by the state court on appeal from the dismissal of the post-conviction petition. We find that the state court's adjudication of this claim was not contrary to, or an unreasonable application of, federal law. Nor do we find that the state court's determination was based on an unreasonable determination of the facts given the evidence.

27

While the judge may have stated that petitioner's claims are barred by res judicata, he clearly gave other grounds for rejecting each claim made in the post-conviction petition. The record reveals that the judge examined each of the claims in the post-conviction petition and determined that each of them lacked merit. Thus, the judge did not summarily dismiss petitioner's post-conviction petition on res judicata grounds, but instead addressed the merits of each claim. Therefore, the judge did not mistakenly use the res judicata standard in dismissing the post-conviction petition.

E. Constitutionality Of Extended Sentence Provision In Light Of Apprendi Decision

In his pro-se supplemental brief filed on August 20, 2002, petitioner argues that the Extended Sentence Provision of the Illinois Sentencing Law is unconstitutional in light of the rule of law announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Petitioner argues that *Apprendi* should be applied retroactively to his case to remedy his allegedly unconstitutional sentence.

We first note that petitioner has failed to raise these issues in his original habeas petition nor has he made any attempt to amend his habeas petition to include these claims. Nevertheless, we will proceed to address these claims.

Petitioner's sentence became final on December 4, 1985, the date the Illinois Supreme Court denied petitioner's leave to appeal during the direct appeal process. In order for *Apprendi* to apply to petitioner's claims, it must be applied retroactively. The Seventh Circuit has held that *Apprendi* is not retroactive and thus "does not disturb sentences that became final before June 26, 2000, the date of its [the *Apprendi* decision's] release." *Curtis v. United States*, 294 F.3d 841, 844 (7th Cir. 2002). Therefore, since petitioner's sentence became final well before the date of the *Apprendi* decision, *Apprendi* cannot be used to disturb his sentence.

For these reasons, we deny petitioner's claims raised in his Supplemental Brief and Argument.

## CONCLUSION

For the foregoing reasons, we deny the § 2254 petition for a writ of habeas corpus brought by petitioner Anibal Santiago. This is a final and appealable order. This case is terminated.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: November 13, 2002